## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **C.M. and A.R.**

**No. 16-1001** (Fayette County 15-JA-126 & 15-JA-127)

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.M., by counsel Thomas H. Ewing, appeals the Circuit Court of Fayette County's September 28, 2016, order terminating her parental rights to C.M. and A.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Vickie L. Hylton, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights upon erroneous findings and without imposing a less-restrictive dispositional alternative. Petitioner also alleges error in the circuit court's denial of her request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR received a referral regarding petitioner's substance abuse and homelessness. A Child Protective Services ("CPS") worker located petitioner at a park near a restroom. Petitioner would not provide the CPS worker with the location of ten-year-old A.R., with whom she had earlier left a residence where she engaged in a physical altercation. Because petitioner exhibited signs of intoxication, law enforcement assisted. Petitioner indicated that she was prescribed Suboxone, but admitted that she no longer obtained the drug from a physician. Eventually, petitioner retrieved A.R. from the restroom and the child stated that petitioner told her to hide there "because she was not in the mood to deal" with CPS. Due to the earlier physical altercation in which she was struck with a cinderblock, petitioner agreed to be

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

examined by a physician. During her examination, petitioner's urine sample was positive for amphetamines, cocaine, THC, and benzodiazepines.

In October of 2015, the DHHR filed an abuse and neglect petition that alleged petitioner had a history of substance abuse that resulted in her and the children being homeless. The petition also alleged that petitioner had a long history of CPS involvement dating back to at least 2008. Thereafter, petitioner waived her right to a preliminary hearing. In November of 2015, the circuit court held an adjudicatory hearing during which petitioner submitted a written stipulation admitting that the children were neglected. The circuit court also granted petitioner a post-adjudicatory improvement period.

The DHHR submitted a status report in March of 2016 that indicated petitioner experienced problems with drug screens. According to the DHHR, these issues led to requests for second samples, which petitioner either refused outright or failed to provide. Further, the report indicated that CPS was concerned that petitioner was altering or attempting to alter her drug screens. Additionally, petitioner was admitted to the Mother's Program to deal with her ongoing substance abuse. Although the program did not meet the requirements for long-term residential substance abuse treatment as required for her improvement period, the circuit court nonetheless extended petitioner's improvement period and ordered her to complete her treatment there.

In July of 2016, the DHHR filed a status report that alleged that, following her completion of the Mother's Program, petitioner failed to maintain contact with CPS for at least two weeks. Additionally, petitioner failed to contact her children, submit to drug screens, or attend the multidisciplinary team ("MDT") meeting during this period.

In September of 2016, the circuit court held two dispositional hearings in relation to petitioner. On one day that petitioner arrived for a hearing, the DHHR indicated that she appeared to be intoxicated. Later, the circuit court ordered petitioner to submit to a drug screen, which was positive for benzodiazepines, cocaine, and Suboxone. During the hearing, the circuit court heard testimony that petitioner was required to complete between six and twelve months of long-term inpatient treatment. Despite this requirement, petitioner submitted to three months of treatment and failed to avail herself of any continuing services or drug screens upon her completion. Testimony also established that petitioner had recently been charged criminally with burglary, grand and petit larceny, conspiracy, and domestic assault. Moreover, petitioner's psychological evaluation included eight recommendations with which petitioner failed to comply. Petitioner testified and admitted that she had been a drug addict for twenty years. Ultimately, the circuit court terminated petitioner's parental rights to the children.[2] Thereafter,

---

[2]According to the parties, child A.R. was placed in the home of her biological father, C.R., with a permanency plan to remain in that home. The parties further state that both of C.M.'s parents' parental rights were terminated in the proceedings below, eliminating any impediment to permanency. According to the guardian, as of the filing of her response brief, C.M. was placed in the home of his maternal aunt while the DHHR undergoes the process to

(continued . . . )

2

petitioner requested post-termination visitation, which the circuit court denied. It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's termination of petitioner's parental rights or denial of post-termination visitation. First, petitioner argues that the circuit court erred in terminating her parental rights upon an erroneous finding that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect and without considering less-restrictive dispositional alternatives. According to petitioner, she made progress in the proceedings below

---

approve a second family home in which the child will be adopted. The guardian further states that C.M. will remain with his aunt while the DHHR approves the other family placement by completing a home study and the requirements of the Interstate Compact on the Placement of Children. The permanency plan for C.M. is adoption in this home.

Because of the extended process necessary to achieve permanency in this matter, the Court reminds the circuit court and the parties of their roles in establishing permanency for children in abuse and neglect proceedings. *See* Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings (establishing a duty to hold a permanent placement review hearing at least once every three months until permanent placement is achieved, among other requirements); and Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings (requiring circuit courts to achieve permanent placement of an abused and neglected child within twelve months of disposition). Additionally, the Court reminds the guardian that her "role in abuse and neglect proceedings does not actually cease until such time as the child[ren are] placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

by obtaining appropriate housing and completing substance abuse treatment at the Mother's Program. As such, petitioner argues that the circuit court should have given more weight to these successes, instead of focusing on her later lapse following her release from the Mother's Program. We do not agree.

As set forth above, the record shows that the Mother's Program was insufficient to address petitioner's substance abuse issues. Specifically, petitioner's improvement period required her to complete between six and twelve months of inpatient substance abuse treatment. Although it is true that the circuit court directed petitioner to complete the Mother's Program following her enrollment, nothing in the record indicates that the circuit court intended for this three-month program to satisfy petitioner's need for longer treatment. Moreover, petitioner failed to follow through with further treatment as recommended upon her completion of the Mother's Program. In fact, petitioner actively began abusing drugs upon her release, as evidenced by her positive drug screen at the dispositional hearing. As such, the Court finds that, contrary to petitioner's argument on appeal, her substance abuse issues persisted throughout the pendency of the proceedings below.

Pursuant to West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person . . . [has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning . . . .

Clearly, the circuit court had sufficient evidence upon which to find there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect due to her ongoing substance abuse and failure to follow the appropriate treatment. Moreover, the circuit court found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's refusal to impose a less-restrictive dispositional alternative, in light of its findings necessitating termination of petitioner's parental rights.

Finally, the Court finds no error in regard to petitioner's allegation that the circuit court erred in denying her post-termination visitation. Petitioner's argument is premised on the allegation that the circuit court made its determination without any evidence of the children's wishes. We do not agree. We have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). First, petitioner does not provide any evidence that the children, ages eleven and nine, respectively, at the time of the circuit court's ruling, were of appropriate maturity to make a request regarding visitation. More important, however, is the fact that petitioner's argument ignores the fact that the circuit court specifically found that it "stopped visitation in July because it appeared that the visits were not good for the children." Accordingly, it is clear that post-termination visitation would have been detrimental to the children's wellbeing and against their best interests. As such, we find no error in the circuit court's denial of post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 28, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: May 22, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker